UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| DAVID ALLEN MILLOT,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 17-cv-04807-RMI<br><br>**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 20, 21 |

Plaintiff David Allen Millot seeks judicial review of an administrative law judge ("ALJ") decision denying his application for benefits under Title II the Social Security Act. Plaintiff's request for review of the Administrative Law Judge's ("ALJ") unfavorable decision was denied by the Appeals Council. (Administrative Record ("AR") 1-4.) The ALJ's decision is therefore the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (Docs. 6, 11) and both parties have moved for summary judgment. (Docs. 20, 21.) For the reasons stated below, the court will deny Plaintiff's motion for summary judgment, and will grant Defendant's motion for summary judgment.

**LEGAL STANDARDS**

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## PROCEDURAL HISTORY

Plaintiff filed his initial application for Title II benefits on June 4, 2013, alleging an onset of disability date of April 11, 2013. (AR 175.) Plaintiff's application was denied initially and on reconsideration. (AR 104-111.) Plaintiff filed a request for hearing with an ALJ and a hearing was held on December 3, 2015. (AR 41.) The ALJ issued an unfavorable decision on March 24, 2016. (AR 26-36.) Plaintiff requested review by the Appeals Council on May 23, 2016. (AR 173.) The request for review was denied on June 19, 2017. (AR 1-4.)

## THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that he has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. *See* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909.[1] The ALJ must consider all evidence in the claimant's case record to determine disability (*see id*. § 416.920(a)(3)), and must use a five step sequential evaluation process to determine whether the claimant is disabled (*see id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation process. (AR 26-36.)

---

[1] The regulations for supplemental security income (Title XVI) and disability insurance benefits (Title II) are virtually identical though found in different sections of the CFR. For the sake of convenience, the court will generally cite to the SSI regulations herein unless noted otherwise.

2

At Step One, the claimant bears the burden of showing he has not been engaged in "substantial gainful activity" since the alleged date he became disabled. *See* 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity, the claimant will be found not disabled. *See id*. The ALJ found that Plaintiff met the insured requirement through December 31, 2018, and had not engaged in substantial gainful activity since April 11, 2013, his alleged onset date. (AR 28.)

At Step Two, the claimant bears the burden of showing that he has a medically severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered from the following severe impairments: morbid obesity, atrial fibrillation, bilateral knee osteoarthritis, major depressive disorder, and post-traumatic stress disorder. (AR 28.)

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing his impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ proceeds to Step Four. *See id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (AR 29.)

At Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") and then determine whether the claimant has the RFC to perform the requirements of his past relevant work. *See id*. § 416.920(e) and 416.945. The ALJ found Plaintiff had the RFC to perform medium work, as defined in 20 CFR 404.1567(c), except that he is able to stand/walk for four hours in an eight-hour work day; he needs a cane for prolonged ambulation or ambulation over uneven terrain; he is able to sit for six hours in an eight-hour work day; he is limited to occasional climbing of stairs, ladders, ropes, and scaffolds, he is limited to occasional crawling, he is able to

perform all other postural activities frequently, he is limited to simple, repetitive tasks, and he is limited to occasional interactions with coworkers and the public. (AR 30-31.) The ALJ found that Plaintiff was unable to perform any past relevant work. (AR 34.)

At Step Five, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. *See* 20 CFR § 416.920(g). If the claimant is able to do other work, he is not disabled. The ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including hand packager and final inspector. (AR 34-35.) Thus, the ALJ found Plaintiff was not disabled from April 11, 2013, through the date of the decision. (AR 35.)

## DISCUSSION

<u>Rejection of Opinions of Treating Physicians</u>

Plaintiff contends that the ALJ committed harmful legal error by rejecting the assessments completed by Plaintiff's treating medical providers, Courtney Ladika, M.D., and Hal Grotke, M.D.. Plaintiff claims that these physicians assessed limitations that would make it impossible for him to perform any sustained work.

"In conjunction with the relevant regulations, [courts] have . . . developed standards that guide [their] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id*. (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."

4

*Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Plaintiff raises several arguments. First, Plaintiff argues that the ALJ erred in rejecting Dr. Ladika's assessment of Plaintiff on the ground that Plaintiff was recently fired from his job and so was under unusual stress. Plaintiff argues that the ALJ failed to explain how Plaintiff's stress level at any given time would invalidate Dr. Ladika's opinions on Plaintiff's physical capacities, citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (finding that even when "facially legitimate reasons" support an adverse determination, "complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy").

The ALJ's discussion regarding Dr. Ladika included the following:

> I have considered the opinion of the claimant's primary care physician, Courtney Ladika, M.D., as reflected (sic) a form completed by Dr. Ladika for the purpose of the disability evaluation (exhibit 5F). I find that Dr. Ladika's opinion is not entitled to great weight because Dr. Ladika first treated the claimant on April 25, 2013 (exhibit 6F/8), at which time she noted that the claimant was under unusual stress, having been fired from his job. Dr. Ladika subsequently noted that medications helped (exhibit 6F/5). Therefore, there is no basis, other than the claimant's own statements, for the limitations indicated. In this regard, I note that the treatment notes on June 26, 2013, which is the date the disability paperwork was completed (exhibit 6F/4) note that the claimant had an outburst at work (exhibit 6F/3); there is no support for the significant physical limitations indicated. Dr. Ladika indicated that the earliest date for which the limitations indicated applies is 2006, which shows that she did not base her assessment on her own observations as she did not treat the claimant in 2006 any time prior to the date the claimant was fired from his job.

(AR 31.)

It is undisputed that when Dr. Ladika started treating Plaintiff, he had just been fired from his job and had a higher than normal level of stress. As Defendant notes, 42 U.S.C. § 1382c(a)(3)(A) defines a "disability" as "[inability] to engage in any substantial gainful activity . . . for a continuous period of not less than twelve months." Thus, the ALJ properly considered the situational and temporary nature of Plaintiff's symptoms when Dr. Ladika first met him. *See generally, Chesler v. Colvin*, 649 Fed. App'x 631, 632 (9th Cir. 2016) (unpublished) (affirming finding of no severe mental impairment where the claimant was looking for work and his "mental health symptoms were situational" and "unlikely to persist once [his] circumstances improved").

Second, Plaintiff challenges the ALJ's observation regarding Dr. Ladika's finding that the

earliest date for Plaintiff's limitations was 2006, arguing that Plaintiff had been a patient for fifteen years at the clinic where Dr. Ladika practices, and that the doctor therefore had access to 15 years of Plaintiff's medical records. However, Plaintiff points to nothing in the record that shows that Dr. Ladika reviewed any historical medical records. Defendant argues, in fact, that the record contained scant treatment records from Dr. Ladika's office, with the earliest records dated March 2011. (AR 369-416.) Further, as Defendant argues, even if Dr. Ladika did review historical records, this would not explain her assessment of debilitating limitations during a time when Plaintiff was working and did not assert disability. It is undisputed that Plaintiff worked from 2006 through 2013, and was fired for reasons other than his physical complaints. (AR 31.)

Third, Plaintiff addresses the ALJ's statement that "Dr. Ladika subsequently noted that medications helped." (AR 31, citing AR 373.) Plaintiff argues that the language regarding medications helping in the document referenced by the ALJ is this: "depression – taking fluoxetine, tolerating well, no side effects, mood is improved." (AR 373.) Plaintiff correctly claims that Dr. Ladika did not state at that visit that the medications helped improve Plaintiff's physical pain or physical functioning. However, this does not indicate error on the part of the ALJ in not affording great weight to the opinion of treating physician Dr. Ladika. The ALJ expressly found that there was no basis, other than Plaintiff's own statements, for the limitations found by Dr. Ladika. He noted in particular that the treatment notes on the date the disability paper work was submitted "provided no support for the significant physical limitations indicated." (AR 31.)

Fourth, Plaintiff finds fault with the ALJ's analysis of the opinion of Dr. Grotke, M.D..
The ALJ stated:
> Another treating source, Hal Grotke, M.D., completed a statement indicating that the claimant is able to sit for seven hours total in an eight-hour work day and stand/walk for up to two hours total; with the need for a sit/stand option; lifting/carrying less than ten pounds occasionally and up to ten pounds rarely; with rare twisting and climbing of stairs and no stooping, crouching, or climbing ladders; fine and gross manipulations limited to 10% of the work day; constant pain that limits concentration; and expected absences occurring more than four days per month (exhibit 12F). I note that Dr. Grotke advised that these limitations existed beginning in 2006 but the claimant had "variable" treatment for more than three years, with more treatment "lately," which is an inadequate basis for the limitations described. As with Dr. Ladika's opinion, as discussed above, the limitations indicated are inconsistent with the claimant having worked from 2006 until he was fired in 2013 for reasons other than his physical complaints. Nevertheless, I find that Dr. Grotke's

statements indicating that the claimant needs a cane for ambulation are supported by the medical record and they are therefore incorporated in the above residual functional capacity.

AR 31.

Dr. Grotke's statement regarding Plaintiff under "Frequency and length of contact," was "variable but monthly lately; more than three years." Plaintiff claims that Dr. Grotke's report that Plaintiff had more treatment "lately" adds to the legitimacy of the doctor's opinion, because this provided more information on which to base his findings. Plaintiff also claims that Dr. Grotke's assessment does not state that Plaintiff's frequency of treatment was the only basis for his assessment finding. Further, Plaintiff claims that the ALJ offered no basis for the conclusion that Dr. Grotke needed to do anything other than respond to the questions as written, and that there is no authority that a "check-the-box" form is any less reliable than any other type of form. These claims are all essentially strawmen, as the ALJ did not make any contrary findings, *i.e.*, the ALJ did not find that Plaintiff having more treatment lately did not add to the legitimacy of Dr. Grotke's opinions, the ALJ did not find that the doctor's assessment stated that the frequency of treatment was the only basis for the assessment finding, and the ALJ did not state that Dr. Grotke needed to do more than to respond to the questions as written. Because Plaintiff's claims, even if true, are of no consequence, the court declines to address their merits.

Finally, Plaintiff cites the ALJ's finding that Dr. Grotke's assessed limitations, "were inconsistent with the claimant having worked from 2006 until he was fired in 2013 for reasons other than his physical complaints." (AR 31.) Plaintiff argues that the ALJ failed to connect the fact that Plaintiff worked in the past, and was fired from his job, to any specific limitations in Dr. Grotke's assessment. This argument is meritless, as the ALJ listed the limitations in Dr. Grotke's assessment two sentences earlier. While Plaintiff stresses that the ALJ did not identify which assessed limitations were contradicted in the medical records, this again is simply a strawman. The ALJ did not state that any of the limitations assessed by Dr. Grotke were contradicted in the medical records; he stated that they were inconsistent with the claimant having worked from 2006 until he was fired in 2013 for reasons other than his physical complaints.

After considering all of Plaintiff's arguments regarding the weight given to the opinions of

7

his treating physicians, the court finds that Plaintiff has demonstrated neither legal error by the ALJ nor a lack of substantial evidence to support the ALJ's decision.

Credibility Determination

Plaintiff contends that the ALJ committed harmful legal error by rejecting his symptom testimony.

The ALJ held in part as follows regarding Plaintiff's testimony:

> The claimant testified that he does very little during the day. He plays golf once a month, having previously played golf seven days a week.
> Upon questioning, the claimant admitted that he stole from an employer because he wanted to be fired. The claimant explained that he would not have quit otherwise, despite having difficulty performing the requirements of the job.
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. There are objective findings in the medical record that establish the presence of multiple severe impairments. However, the claimant's complaints of pain are not well-documented in the medical record and there (sic) are no (sic) corroborated by any physical findings such as range of motion limitations or muscle atrophy. The claimant is not receiving significant treatment for his alleged physical complaints except medication, and his alleged mental dysfunction is very focused on his past employment with the post office. I have considered the claimant's written statements (exhibit 3E) and written statements submitted by the claimant's spouse (exhibit 4E) but find that the record as a whole does not support the level of impairment indicated. In addition, the claimant's ability to play golf is inconsistent with his testimony that he does not do any standing or walking, and is unable to use his arms due to repetitive use injuries. The claimant listed numerous medication side effects that he has not reported to his treating physicians. The claimant worked for several years despite his physical complaints and stopped working due to interpersonal conflicts, which he is better able to manage after having therapy. The claimant's theft from an employer was reasonably explained as a set-up for termination, but his stated difficulties at work were the result of interpersonal problems unrelated to his chronic complaints of pain and other symptoms.

AR 33.

Plaintiff argues that the ALJ erred by rejecting Plaintiff's symptom testimony on the ground that it was inconsistent with the medical evidence of record. Plaintiff argues that it is error to discount the severity of a claimant's symptoms, as opposed to the existence of the underlying medical impairments which the ALJ acknowledged, based on lack of support by objective evidence, citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). However, in *Lester*, the Ninth

Circuit held that, "[o]nce the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." (Emphasis added.) That was not the case here, as the ALJ considered not only the facts that Plaintiff's alleged symptoms were not well-documented in the medical record, and were not corroborated by any physical findings, but also that: 1) Plaintiff was not receiving significant treatment for his alleged physical problems except medications; 2) Plaintiff's alleged mental problem was focused on his former employment; 3) the record as a whole did not support the level of impairment Plaintiff claimed; 4) Plaintiff's ability to play golf was inconsistent with his testimony that he does not do any walking or standing and is unable to use his arms; 5) in connection with his disability claim, Plaintiff listed numerous medication side effects that he had not reported to his treating physicians; 6) Plaintiff worked for several years despite his physical complaints; 6) Plaintiff stopped working due to interpersonal conflicts, which he is better able to handle after having therapy; and 7) Plaintiff's stated difficulties at work were the result of interpersonal problems unrelated to his chronic complaints of pain and other symptoms. (AR 33.)

Plaintiff claims that the ALJ erred in finding that his ability to occasionally play golf invalidated his testimony regarding his symptoms, citing *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (discussing distinction between routine activities of daily living and requirements of a full time job). Plaintiff argues that the ALJ did not consider the entirety of Plaintiff's testimony regarding this activity. This testimony was that he played golf about once a month, and always used a golf cart. (AR 60.) Plaintiff testified that his therapist told him he should get out of the house. (*Id*.) Plaintiff also stated that he could not swing his golf club over his head, he had "no backswing," and he could not use his lower body. (*Id*.) The court finds nothing in the ALJ's decision that indicates that he did not consider Plaintiff's stated limitations in regard to golfing. The court finds no error in the ALJ's conclusion that Plaintiff's ability to play golf, even in the limited manner to which he testified, was inconsistent with the claim that he did no standing or walking and was unable to use his arms. Further, the court notes that Plaintiff's monthly golf game was but one of several factors the ALJ found which caused him to discredit Plaintiff's

9

symptom testimony.

Stressing that the ALJ considered the fact that Plaintiff worked for several years despite his physical complaints and was terminated for interpersonal conflicts "unrelated to his chronic complaints of pain and other symptoms," Plaintiff complains that the ALJ did not connect his conclusions to any facts in the medical evidence that invalidated Plaintiff's symptom testimony. Again, Plaintiff attempts to create an issue where none exists. Both of Plaintiff's treating physicians found that his physical limitations existed as early as 2006, a fact the ALJ expressly noted earlier in his decision. (AR 31.) As the ALJ stated, Plaintiff's own testimony established the facts that he worked until he was fired in 2013 for stealing and that he stole because he wanted to be fired. (AR 58.) *See* SSF 16-3p ("Adjudicators must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments."). The ALJ simply considered these uncontested facts. The court finds no error.

RFC Determination

Plaintiff contends that the ALJ committed harmful error by determining Plaintiff's need for a cane without any articulated basis supported by substantial evidence in the record. Specifically, Plaintiff claims that the ALJ's determination of his need for a cane only for "prolonged ambulation or over uneven terrain" (AR 30) is not tied to any substantial evidence. Plaintiff argues that this is error, and that the ALJ failed to provide a basis for determining that Plaintiff only needed a cane for prolonged ambulation or uneven terrain. Plaintiff further claims that the ALJ's finding regarding Plaintiff's need for a cane is inconsistent with all medical opinions in the record.

As Defendant argues, given the variance between the different functional assessments, it is not surprising that the ALJ did not adopt any one physician's opinion in its entirety. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (holding ALJ need not adopt a medical opinion in its entirety just because he attributes it significant weight). The ALJ stated expressly that he based his RFC determination on consideration of the entire record. (AR 30.) As to his RFC determination that Plaintiff needs a cane for prolonged ambulation or ambulation over

10

1   uneven terrain, the ALJ identified the pertinent evidence supporting his RFC finding. (AR 29, 533,

2   534). The ALJ noted that primary care physician Dr. Grotke "noted the presence of knee pain,

3   with an antalgic gait and use of a cane," but that consultative examiner Dr. Wagner "noted a

4   'fairly normal exam' of the knee." (AR 29.) Earlier in his decision the ALJ found that the report

5   from the post-hearing examination of Plaintiff conducted by Dr. Wager was entitled to great

6   weight because the limitations indicated were consistent with the record as a whole. (AR 31-32.)

7   Among the observations made by Dr. Wagner were that Plaintiff used a cane but did not appear to

8   lean on it and that a cane "may be helpful for long distance ambulation." (AR 29, 533, 534). In

9   addition, the ALJ found that the report from Dr. Tang, who evaluated Plaintiff at the State

10  agency's request, was entitled to greater weight than the opinions of Drs. Ladika and Grotke. (AR

11  31.) The ALJ found that Dr. Tang's opinion that Plaintiff was able to perform medium work was

12  consistent with the record as a whole, "which reflects complaints of body pain with no clear

13  etiology and good response to pain medications." (*Id.*) The evidence before the ALJ related to

14  Dr. Tang's report included the fact that Plaintiff was not using a cane when he went to his October

15  27, 2013 examination with Dr. Tang, yet he was able to walk without assistance and had a normal

16  gait. (AR 424–25.) Thus, the court rejects Plaintiff's claim that the ALJ's finding regarding

17  Plaintiff's need for a cane is inconsistent with all medical opinions in the record. Further, while

18  Plaintiff espouses a different interpretation of the evidence regarding his use of a cane, the ALJ's

19  interpretation of the evidence was supported by substantial evidence and will be upheld. *See Lewis

20  v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("if evidence is susceptible of more than one rational

21  interpretation, the decision of the ALJ must be upheld").

22  //
23  //
24  //
25  //
26  //
27  //
28  //

# CONCLUSION

Based on the above, the court finds that Plaintiff has failed to demonstrate either a lack of substantial evidence or legal error in connection with the ALJ's decision. Accordingly, Plaintiff's motion for summary judgment is hereby DENIED and Defendant's motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: October 26, 2018

ROBERT M. ILLMAN
United States Magistrate Judge